Rockingham, }
Nov. 7, 1928. }

FRED A. DENNISON & a., *Ex'rs*, v. MABEL A. LILLEY & a.

*Frank B. Oakes*, for the plaintiffs.

*Frederick J. Grady*, for the defendants.

*Jeremy R. Waldron*, attorney-general, for the state.

BRANCH, J.   Although the town of Derry refused to accept the trusts created by the clauses of the will now under consideration, the effect of this action was merely to leave their execution to other trustees.  The twenty-fifth item specifically provides that if the town shall refuse or neglect to accept the trust thereby created, the execu-

tors shall act as trustees. Suitable trustees will be appointed to carry out the provisions of the twenty-sixth item, since "equity never allows a legal and valid trust to fail for want of a trustee." *Campbell v. Clough*, 71 N. H. 181, 184. The executors, therefore, are entitled to have the foregoing questions answered.

"Ordinarily, in the absence of any provision in the will as to the time of payment, pecuniary legacies are payable at the end of the year from the death of the testator, without interest; but if not then paid, they bear interest after the expiration of the year." *Kingsbury v. Bazeley*, 75 N. H. 13, 15, and cases cited. "Interest, in the sense in which the word is used in connection with the payment of legacies, is the compensation allowed by law for the deprivation of a legacy or distributive share beyond the period when it is payable according to the terms of a will or statute." 3 Woerner, Am. Law Adm. (3d. ed.), s. 458. The right to receive interest is an "incident to the legacy itself" (*Davison v. Rake*, 44 N. J. Eq. 506, 510), and the obligation to pay interest rests upon the estate. *Kent v. Dunham*, 106 Mass. 586, 590; *Loring v. Mass. Hort. Soc.*, 171 Mass. 401, 403; *Boston Safe Dep. & Tr. Co. v. Bacon*, 229 Mass. 585; *Sloan's Appeal*, 168 Pa. St., 422; *Matter of Rutherfurd*, 196 N. Y. 311, 315. "After the legacies became due and payable they were matured obligations against the estate, and bore interest, as any other liquidated demands would do, at the rate fixed by law." *Sloan's Appeal, supra.* "Whether the assets of the estate have been fruitful or unproductive does not affect the right of the legatee. He is in the same position as a creditor and entitled to be awarded interest at the legal rate for such time as he is kept out of his demand." *Matter of Rutherfurd, supra.* There is no essential connection between the obligation of an estate to pay interest upon overdue legacies, and the personal liability of an executor or administrator to the estate for interest under certain circumstances. See *Bartlett v. Fitz*, 59 N. H. 502, 503, and cases cited. "It is incident to the principal demand, and not imposed upon the executor for his neglect." *Kent v. Dunham, supra.*

The foregoing rule applies only to pecuniary legacies. Specific bequests are governed by a different principle. "In the case of a specific legacy, that is, a legacy of any specific article or thing, the income, profits, or produce of the article after the decease of the testator, goes to the legatee without regard to the time at which the article is to be delivered to the legatee." *Loring v. Woodward*, 41 N. H. 391, 394. "Specific legacies are not entitled to interest *eo nomine*." 3 Woerner, Am. Law Adm. (3d *ed.*), s. 458.

*a.* There is no apparent reason for excluding the legacy given by the twenty-fifth clause of the will from the operation of the ordinary rule, and the executors are, therefore, advised that it bears interest from one year after the testator's death.

The effect of the twenty-sixth item was to give both specific bequests of securities and a pecuniary legacy. It was clearly the purpose of the testator that the trustee should receive, in addition to certain stocks, a substantial sum of money. It must be presumed that he had in mind the well-known rule that legacies are payable within a year after the death of a testator, and that he expected his executors to comply with the law and pay this legacy when it was due. At the expiration of the year it became the duty of the executors to pay the legacy, and the relative rights of the hospital and the remaindermen became fixed as of that date. After that time, so long as the executors retained in their possession the fund created by this bequest, they held it in trust for the proposed hospital. *Tilton* v. *Society,* 60 N. H. 377, 384; *Kent* v. *Dunham,* 106 Mass. 586, 591. In order to discharge this trust obligation, the named securities and the cash necessary to make up the amount of the legacy should have been definitely allocated to the hospital trust at that time and managed thereafter as a separate fund. See *Brown* v. *Ferren,* 73 N. H. 6, 8. The hospital should now be placed as nearly as possible in the position which it would occupy if this had been done. The trust should be established as of January 11, 1921, and the value of the stocks should be computed as of that date. The balance necessary to make up the fifty thousand dollars will then constitute the amount of the pecuniary legacy, and interest should be computed upon this amount from the above date.

*b.* In accordance with the foregoing principles, the executors are advised that they should pay over to the trustee who shall be appointed to carry out the provisions of item twenty-six, any dividends which they may have received since the death of the testator on the securities named in said clause. *Jewell* v. *Appolonio,* 75 N. H. 317, 318. Furthermore, if any interest has been earned or should have been earned upon said dividends, under the usual rule in regard to the duty of trustees, during the time they have remained in the hands of the executors, then such accumulations belong to the trustee.

*c.* The answer to the third question of the executors has also been indicated above. For the purpose of ascertaining the amount of the pecuniary legacy given by item twenty-six, the value of the stocks is to be computed as of January 11, 1921. No deduction from this

amount is to be allowed by reason of any enhancement in the market value of the stocks since that date. If, in the meantime, there has been a decrease in the value of the securities, it is plain that the funds of the estate cannot be used to make up the loss, since this would result in casting the burden unjustly upon the residuary legatees. Whether in such a situation the executors should be held personally liable for the loss is a question for the probate court to pass upon in the first instance.

*Case discharged.*

All concurred.