Shaw, C. J.
This was an action of assumpsit by Joseph Lovering, son and legatee of Joseph Lovering deceased, against William Minot and Nathaniel Lovering, executors of the will of Joseph Lovering, Senior.
1. The first question is, whether the plaintiff, as one of the, five children, to whom the income of the residuum was given after paying debts and legacies, and setting apart sums given in trust to raise annuities, is entitled to the income which accrued during the first year after the testator’s decease.
After giving to the trustees a sum of $20,000, and $4,000 in trust to pay the income to his son, the plaintiff, and similar sums upon similar trusts for other children, the testator directs, that the residue be disposed of as follows: —
“I give to said Minot and Wells, (trustees,) all the residue and remainder, &c., (personal,) in trust, to invest, &c., and pay over and distribute the net income to and among my five children, William, &c., (including Joseph, Jr.,) one fifth each, during their respective lives, half yearly, or oftener,” — then over, with special and detailed directions.
Under this will, the court are of opinion that the plaintiff is entitled to one fifth part of all the income which accrued upon the residuum of the fund, from the time of the decease of the testator.
In the case as it exists upon the facts, it appears that there was an abundance of personal property to meet the debts and pecuniary legacies and from the trust funds, to raise annuities or incomes in the nature of annuities ; and the cestui que trusts, to whom the income of the residue is given, are entitled to the whole of that income from the decease of the testator.
And, although it could not be immediately paid over, be« *157 cause the executors could not know how much would be wanted, and what the residue would be, yet the accounts, when afterwards made up, would show what part of the income accrued from capital, and what part from income accumulated, and then the income due to each would be ascertained.
We think, therefore, that, when the funds were transferred from the executors to the trustees, the assets showing what was received from income and what from capital, it was the duty of the trustees to distribute that part of it which was composed of interest, and retain the amount of capital as it existed at the decease of the testator, as the capital sum, constituting the residue, to be invested and held under the trust.
There has been some conflict of authorities on this subject. Some of the earlier cases seem opposed to this view, and tend to show, as a general rule, that interest upon a residue shall not commence till the expiration of the year. Sitwell v. Bernard, 6 Ves. 520; Stott v. Hollingworth, 3 Madd. 161; Taylor v. Hibbert, 1 Jac. & Walk. 308.
But the later cases have settled it the other way, as we think, quite decisively. Angerstein v. Marlin, Turn. & Russ. 234; Hewitt v. Morris, Ib. 241. And the same rule has been adopted in New York. Williamson v. Williamson, 6 Paige, 298.
And these cases seem to the court to have decided the question upon just principles.
It is a question between the first cestui que trust for life and the remainder-man. The effect of a different decision would be to apply the first year’s income to increase the capital ; to take it from the first taker, and apply it to an accumulation for the benefit of the future taker.
It is contrary to the presumed intent of the testator, to narrow the benefit intended for the first object of his bounty, for the benefit of an object more remote.
Besides, the words of the will are, “ the income,” with nothing to restrain them, and make them include anything less than the whole income.
*158 2. Upon the other point the court are of opinion that the plaintiff is entitled to his proportion of the income actually earned by the trust fund, whether it exceeds six per cent or not.
The testator authorized his executors and trustees to retain the same stocks in which his property was invested at his decease, or transfer them and reinvest. He also authorizes them to keep the whole together, or make partition. In fact, they have kept the whole together. Had they made partition and assigned to the fund, for the plaintiff, stocks paying 'more than six per cent, the direction of the will is clear, to pay the net income to him. So long as all remain together, all must share any excess or deficiency in just proportion.

Defendants defaulted.